FILED & JUDGMENT ENTERED
David E. Weich

Apr 28 2009

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

```
IN RE:                               )
                                     )  Case No. 07-30541
STEVEN KEITH MILESKI                 )  Chapter 7
                                     )
              Debtor.                )
_____)
                                     )
STATON HOLDINGS, INC., d/b/a         )
STATON WHOLESALE, d/b/a STATON       )  Adversary Proceeding
CORPORATE & CASUAL                   )     No. 07-03072
                                     )
              Plaintiff,             )
v.                                   )
                                     )
STEVEN MILESKI                       )
                                     )
              Defendant.             )
_____)
```

**ORDER**

This matter is before this Court on Defendant Steven Mileski's Motion to Reconsider Order Denying Motion to Dismiss and Partial Summary Judgment and Plaintiff Staton's Holdings, Inc.'s Motion for Judgment on the Pleadings or Summary Judgment. A hearing was held on February 24, 2009.

## I. BACKGROUND

For a second time in recent memory, this Court must wrangle with the uncommon, but legally knotty question of whether a "death penalty" default judgment entered by a state court against a recalcitrant defendant has a collateral estoppel effect in subsequent dischargeability litigation between the same parties.

In Sartin v. Macik, Adversary Proceeding No. 05-3179, this Court held that such a North Carolina default judgment had a binding collateral estoppel effect. However, that ruling was reversed by the Fourth Circuit Court of Appeals in Sartin v. Macik, 535 F.3d 284, 291 (4th Cir. 2008).

A second analysis of this issue is required because Sartin was founded on North Carolina law. The current case is based upon Texas law.

## II. OPERANT FACTS

In 2004, Raging River Apparel, Inc. ("Raging River") sold a sizeable quantity of sportswear to its Texas distributor Staton Holdings ("Staton") for resale to its customers. Steven Mileski ("Mileski"), was the principal of Raging River. (Pl.'s Original Pet. 4).

In July 2005, Staton advised Raging River that it intended to stop carrying Raging River product. On October 20, 2005, Staton sent Raging River/Mileski a list of unsold

sportswear that it wished to return for credit pursuant to a provision in the parties' written purchase agreement.

Raging River first told Staton that its return request was being processed. Then, on October 27, Raging River notified Staton that it would not accept the proposed return. As a result, Staton sued Raging River in Texas state court to recover for breach of contract and seeking specific performance. (Pl.'s Original Pet. 2).

The Texas action turned on the final form of the parties' agreement and the return policy contained therein. Id. at 2-3.  Staton relied on a written agreement dated August 23, 2004, that contained an unlimited return policy for the goods purchased from Raging River.

Raging River denied that Staton was contractually entitled to return the product. In discovery, Raging River (effectively Mileski) provided Staton with a contract dated August 11, 2004, which was represented to be the controlling agreement of the parties. The August 11th document conditioned Staton's right to return current year product on Staton carrying Raging River goods for the succeeding product year.

Thereafter, Staton amended its petition (complaint) to add Mileski as a defendant to the Texas action and to allege a claim of fraud against him, individually. The

facts of Staton's amended complaint states, in relevant part:

> [B]oth prior to and after the filing of this lawsuit, [Mileski] has committed fraud in his dealings with [Staton] in wrongfully denying valid agreements with [Staton] as well as, upon information and belief, creating false documents in order to misrepresent the actual agreements between the parties to his advantage. Upon information and belief, Defendant Steve Mileski personally created, or directed the creation of a false document, which he represented to be a valid agreement between the parties, presented this false document through the course of discovery as a valid document, and relied upon such document to create a non-meritorious defense to Plaintiff's valid claims. (Pl.'s Second Am. Pet. 3).

The fraud count further states:

> [Mileski] took steps and committed overt acts before and after the fact in wrongfully denying valid agreements with [Staton] as well as, upon information and belief, creating false documents in order to misrepresent the actual agreements between the parties to his advantage. Id. at 4.

In short, Staton maintained that Mileski took an early draft of the parties' agreement and added a sentence to its end that stated, "This return policy is only in effect if Staton is carrying the Raging River line the following year." (Pl.'s Mot. for Sanctions 1-2). Since Staton did not continue to carry Raging River products for the succeeding year, this language would deny Staton's return rights and defeat its legal action.

Staton then filed a motion for sanctions under Texas discovery Rule 215. The sanctions motion repeats the factual allegations, points out that under applicable Texas law Mileski's actions could justify sanctions up to and including the "death penalty, and asks that Defendants' answers be stricken. (Pl.'s Mot. for Sanctions 1-3).

Staton's sanctions motion was supported by the affidavit of Mike Davis ("Davis"), the Raging River agent who negotiated the product sale to Staton. Davis confirms in his affidavit that the August 23rd agreement was the parties' final written agreement and not the August 11th document tendered by Defendants Mileski and Raging River ("Defendants") in discovery. Davis says no conditional return provision was agreed to by the parties; nor was such a provision ever included in a prior draft of their agreement. Id. at Ex. 3 ¶ 5-6.

A hearing on the sanctions motion was held on February, 20 2007 before the Hon. Sally Montgomery. Staton's attorney attended the hearing. (Sanctions Hr'g Tr. 4-5). Raging River and Mileski received notice, but neither chose to attend.[1] Shortly before the hearing, Mileski called Staton's attorney to advise that he would not be there. Id. at 4-5.

---

[1] Defendants' attorney had previously withdrawn from the case.

At the hearing, Judge Montgomery heard arguments from Staton and admitted evidence relating to the discovery matter. Id. at 8-10. After reviewing this evidence and after a number of questions posed to Staton's attorney, Judge Montgomery agreed with Staton's contention that Mileski had falsified and submitted a forged document in discovery. Id. at 18. As a sanction, Staton was awarded its attorneys fees and Defendants' pleadings were stricken. (Order on Mot. for Sanctions and Default J., hereafter the "Texas ruling").

At the hearing, Staton's attorney also proffered his client's evidence relating to the underlying contract dispute, including the amount and dollar cost of the product Staton sought to return and the difficulties it experienced tying to make those returns. (Sanctions Hr'g Tr. 17-23).[2]

Afterward, the court announced a default judgment in Staton's favor. Staton was awarded $168,887.16 in actual damages, $15,784.50 of accrued interest, and $5,000 in attorney's fees.[3] Id. A written decision was entered on February 20, 2007. (Texas Ruling). Raging River and Mileski did not appeal, and the Texas ruling became final.

---

[2] Some of this evidence was submitted post hearing by affidavit.
[3] The order made provision for up to $5,000 of additional attorney's fees if Defendants unsuccessfully appealed. They did not.

On June 18, 2007, Mileski filed a Chapter 7 bankruptcy case in this Court. Staton responded with the current adversary proceeding seeking to have its judgment debt deemed non-dischargeable as the product of fraud (11 U.S.C. §523(a)(2)(A)) and/or a willful or malicious injury (11 U.S.C. §523(a)(6)).

### III.   STATEMENT OF POSITIONS

Staton maintains that there is little or nothing to determine in this adversary proceeding. The Texas ruling decided liability, damages, and the nature of the debt owed to it by Mileski. In Staton's mind, Mileski is collaterally estopped from re-litigating any of these issues in this forum. Its judgment debt is non-dischargeable as a matter of law.

Staton's §523(a)(2)(A) misrepresentation/fraud claim is based on the assertion that Mileski caused Raging River to enter into an agreement with Staton, which he never intended for Raging River to perform. (Complaint, ¶16-17). Staton points out that Texas law makes a false promise of future performance actionable as a false representation (a necessary requirement under §523(a)(2)(A)).

On the §523(a)(6) count, Staton says Mileski's "discovery fraud" -- the creation of a false document during discovery in the Texas lawsuit -- constitutes a

"willful and malicious" injury as a matter of law. Staton
cites Judge Montgomery's finding that Mileski had
"fabricated and presented the false document in an effort
to defeat Plaintiff's claims." Between the two theories,
Staton argues the entirety of its judgment debt is non-
dischargeable.

Mileski disagrees on all fronts. There was no
collateral estoppel effect to the Texas ruling. The
Defendants were not present at the sanctions hearing. The
court lacked personal jurisdiction over Mileski. The
Defendants were not represented by counsel. And, most
notably, as a default judgment, the Texas ruling was not
"actually litigated," because the Texas Ruling fails to
demonstrate that Staton met its required evidentiary burden
at hearing.

**IV. DISCUSSION**

We have a mix of motions before us seeking: dismissal,
judgment on the pleadings, or alternatively, summary
judgment. Since both sides have made submissions outside
the pleadings and the case is beyond the discovery phase,
we are effectively considering cross motions for summary
judgment. See FED. R. BANKR. P. 7012(d).

Summary judgment is appropriate under Rule 7056 of the
Federal Rules of Bankruptcy Procedure and Rule 56 of the

Federal Rules of Civil Procedure when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 317 (1986). The party moving for summary judgment bears the initial burden of pointing to the absence of a genuine issue of material fact. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). The burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact. Id. at 718-19.

## A. Collateral Estoppel Under Texas Law

The essential question posed by the current motions is whether under Texas law, collateral estoppel precludes Mileski from contesting the findings and conclusions found in the Texas ruling in this dischargeability action.

Under principles of full faith and credit, the "judicial proceedings of any ... state shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. Accordingly, whether the Texas ruling is to be

afforded a collateral estoppel effect is determined under Texas law. <u>Sartin</u>, 535 F.3d at 287.

Texas, like North Carolina, employs a traditional application of the doctrine of collateral estoppel as set forth in the Restatement (Second) of Judgments. <u>See</u> <u>Gober v. Terra + Corp. (In re Gober)</u>, 100 F.3d 1195, 1204 f.6 (5th Cir. 1996) (citing <u>Bonniwell v. Beech Aircraft Corp.</u>, 663 S.W.2d 816, 818 (Tex. 1984)).

That traditional application of collateral estoppel, can be summarized as follows:

> [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982).

Texas law states the principle in slightly different, but entirely consistent, terms:

> A party is collaterally estopped from relitigating an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first;(2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. <u>Garner v. Lehrer (In re Garner)</u>, 56 F.3d 677, 680 (5th Cir. 1995), *abrogated on other grounds* by <u>In re Caton</u>, 157 F.3d 1026 (5th Cir. 1998).

The only element in dispute is whether the issues resolved by a "death penalty" default judgment[4] have been "fully and fairly," or "actually," litigated (hereafter "actually litigated"). The Supreme Court of Texas has never directly addressed this question.

### i.   Collateral Estoppel & Default Judgments

The Restatement stipulates that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement (Second) of Judgments § 27 cmt. e (1982).

Based on this general principle, the Fourth Circuit majority in Macik concluded North Carolina's Supreme Court would consider a default judgment, even one entered as a "death penalty" discovery sanction not to have a collateral estoppel effect. Sartin, 535 F.3d at 289

Since both states adhere to the traditional rule, and both state rulings against these two debtor/defendants were "death penalty" default judgments, our inquiry might end here. However, Texas case law is more developed than North Carolina law on this topic. As we will see, under some circumstances, Texas case law treats a "death penalty"

---

[4] Technically, we have two rulings whose preclusive effects, if any, are being assessed in this action: the sanctions order and the default judgment that was awarded as part of the relief. For convenience, we will refer to both as the "default judgment," unless otherwise stated.

default judgment as "actually litigated" and possessing a
collateral estoppel effect.

Part of the confusion in determining the collateral
estoppel effects, if any, of a state default judgment
arises from the fact that "default judgment" is used to
describe several different types of judgments.

In the most common circumstance, a defendant fails to
answer a complaint and judgment is entered against him. See
Gober, 100 F.3d at 1204 (citing Stoner v. Thompson, 578
S.W.2d 679, 683 (Tex. 1979)). This is known as a "no-
answer default judgment." See Gober, 100 F.3d at 1204. In
such circumstances, the defendant is deemed to have
"admitted" both the facts properly pled in the complaint
and the justice of the opponent's claim. Id. Most courts,
North Carolina and Texas included, consider a no-answer
default not to have been "actually litigated" and
therefore not preclusive on subsequent litigation. See
Sartin, 535 F.3d at 289; Gober, 100 F.3d at 1204 (citing
Thompson v. Turner (In re Turner), 144 B.R. 47, 51-53
(Bankr. E.D. Tex. 1992)).

However, "default judgment" also refers to a defendant
who has answered a complaint and participated in the
action, but who, for one reason or another, fails to see
the matter through trial or other final disposition on the

12

merits.  See Gober, 100 F.3d at 1204. This type of default judgment is termed a "post-answer default." Id.

There are at least two varieties of post-answer defaults: (1) the defendant who simply abandons the defense; and (2) the "death penalty" default. The latter variant of the post-answer default occurs when a defendant's engages in such egregious misconduct in the case that the trial court strikes his answer and enters default judgment against him. Hence, "death penalty." Like Macik, the Texas ruling was a post-answer, "death penalty" default ("death penalty default," for short).

Under Texas law, a post-answer default is neither an abandonment of the defendant's answer nor an implied confession of any issues joined by the defendant's answer. Stoner, 578 S.W.2d at 682.  Consequently, if it is to have a preclusive effect, a default judgment cannot simply be entered on the pleadings. Id. Rather, the plaintiff must offer evidence and prove his case as in a judgment upon a trial. Id.; see also Pancake v. Reliance Ins. Co (In re Pancake), 106 F.3d 1242, 1244 (5th Cir. 1997) (holding that a state court judgment did not have a preclusive effect where the record failed to demonstrate that the state court conducted a hearing in which the party was required to meets its burden of proof).

However, when such evidence is presented, a post answer default meets the "actually litigated" standard described in Section 27 of the Restatement and is eligible for collateral estoppel effect. Comment "d" to that provision states, "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." Restatement (Second) of Judgments § 27 cmt. d (1982).

Therefore, in order to determine whether the Texas ruling has any preclusive effect(s) in this dischargeability proceeding, we must first review the evidentiary record presented to Judge Montgomery in connection with the sanctions motion.

To that end, this Court has reviewed: the case pleadings, the transcript from the sanctions hearing, the affidavits and exhibits presented to the state court, and finally the affidavits filed after the hearing.

### ii. Evidence Supporting the Texas Death Penalty Default for "actually litigated" Purposes

Both Defendants filed answers[5] and participated in the Texas case through discovery. Legally, the Texas ruling was

---

[5]Earlier in the case, Mileski filed a special appearance in the Texas action wherein he asserted a lack of personal jurisdiction. The matter was set for hearing before the Texas court, but was then removed from the docket at the parties' request. The case proceeded into discovery,

a post-answer default judgment. The Texas ruling was also a discovery sanction under Rule 215.

### **Discovery Fraud**

By the sanction hearing, there was no dispute as to which document, August 23rd or August 11th, was the actual agreement. Claiming that the August 11 agreement had been tendered in discovery by error, Defendants acknowledged the August 23, 2004 agreement was the parties' actual agreement. See Def.'s Raging River's Resp. to Pl.'s Mot. for Summary J. Thus, the controlling agreement and the operative return policy, two essential facts, were established prior to the sanctions hearing.

As to the other factual grounds supporting the Texas Ruling, at the hearing Judge Montgomery considered Staton's motion for sanctions and the exhibits thereto. (Sanctions Hr'g Tr. at 8-12). These exhibits included several relevant pieces of documentary evidence: (a) Defendants' Response to Staton's request for disclosures and production, (b) the August 11, 2004 agreement tendered by the Defendants in response to Staton's discovery requests, (c) the August 23,

---

mediation and finally was set for trial without Mileski reasserting the defense. From the sanctions hearing transcript and the Texas ruling itself, it is clear that the State Court considered this a dead issue and believed it had personal jurisdiction over the Defendants.

Mileski now seeks to resurrect this, and several other prior defenses, in this dischargeability action. However, having waived or abandoned these issues during the state court, Mileski is estopped from reasserting them in this forum.

2004 contract, and (d) the affidavit of Mike Davis ("Davis"). (Pl.'s Mot. for Sanctions Ex. 1-3).

Staton also tendered to Judge Montgomery a series of emails from Davis, the Raging River salesman who negotiated the agreement with Staton. In these, Davis explains the genesis of the August 23rd agreement; affirms that the August 23 agreement was the parties contract, not the August 11 document; and states unequivocally that a conditional return provision was never a part of the negotiations or agreement drafts. (Sanctions Hr'g Tr. 9). The Texas court specifically admitted the August 11 draft, the Davis affidavit and its attached emails into evidence. (Sanctions Hr'g Tr. 8-9).

Based upon this evidence, Judge Montgomery concluded that Mileski had fabricated and presented a false document during discovery. (Sanctions Hr'g Tr. 16-17). The judge then granted Staton's motion and struck Defendants' pleadings, leaving them with no answer in the case. Id. at 17. The written order memorializing the judge's ruling reflects Staton's reliance and concludes, "[T]he Defendant fabricated and presented a false document during discovery in this case in an effort to defeat Plaintiff's claims." (Texas Ruling).

16

At a minimum, the discovery fraud portion of Staton's action was "actually litigated." Mileski's reliance on the Fifth Circuit's decision in <u>Pancake</u> to argue otherwise is misplaced. There the circuit court held that a prior state default judgment lacked a preclusive effect if there was no showing that the plaintiff had met its evidentiary burden of proof at hearing. The difference here is that we have an evidentiary showing. Rather than <u>Pancake</u>, our case is more akin to the Fifth Circuit's decision in <u>Gardner</u>. <u>Garner v. Hehrer (In re Garner)</u>, 56 F.3d 677, 677 (5th Cir. 1995). In <u>Gardner,</u> another post-answer default case, the court conducted a trial in defendant's absence. <u>Id.</u> at 678. Based on the testimony and evidence presented during that trial, the court granted the plaintiff summary judgment. <u>See</u> <u>Id.</u> at 680.

Just as in Garner, Judge Montgomery's admission and consideration of evidence regarding the fabrication of the disputed sentence amply supports her ruling of discovery fraud.

Per Texas law, these issues were properly raised and were actually litigated. The determination of discovery fraud has a collateral estoppel effect. <u>See</u> Restatement (Second) of Judgments § 27 cmt. d (1982).

**The Remaining Claims: Breach of Contract, Specific
Performance and Fraud in the Parties Dealings**

So far, the collateral estoppel analysis has been
confined to the discovery fraud count of Staton's Second
Amended Petition and as presented in the Sanctions Motion.
Staton assumes that the Texas ruling also preclusively
determined the remaining issues presented in the Complaint,
including the original breach of contract claim, the
recently added non-discovery fraud claim and damages. This
Court is not entirely convinced by Staton's suggestion.

1.   **Notice and Due Process**

The first question to be addressed regarding these
other claims relates to due process. The essential
requirements of procedural due process are notice and an
opportunity to be heard.   <u>Rosenfield v. Wilkins</u>, 280
F.App'x 275, 283-84, 2008 WL 2224915 (4th Cir. 2008).

The Defendants were served with the motion for
sanctions and were given notice of the hearing.  From the
motion, Defendants were on notice that Staton intended to
litigate the discovery fraud claim and if successful,
intended to ask the State court to strike their answers.
Thus, under due process principles, the sanctions motion
and notice clearly support the discovery fraud
determination and striking defendants' answers.

The prayer for relief in the sanctions motion asks that Defendants' answers be stricken and asks for other relief, but does not specifically ask for a default judgment. (Pl.'s Mot. for Sanctions 3). For this reason, the undersigned initially questioned whether Mileski was on notice that judgment might be in the offing, as well. Now, having carefully read the motion, notice, cover letter, and applicable law, this Court is satisfied that procedural due process was afforded the Defendants as to these claims.

The prayer portion of the order might not specifically request default judgment, but it does ask the court to strike the Defendant's answer and or "for some appropriate measure." Id. More importantly, in the body of the motion, Staton clearly explains the legal authority for these sanctions, the meaning of a "death penalty" sanction and cites several illustrative cases where this relief was granted to redress abuse of the discovery process.

If any question remained about the relief Staton was seeking, the accompanying cover letter from Staton's attorney spelled this out to the Defendants: "Due to the upcoming sanctions hearing, in which I have requested that the Court strike your answer in this matter and **to give**

**judgment to the Plaintiff**…." McKassky letter, Feb. 13, 2007 (emphasis added).

Upon a finding of abuse, Texas Civil Procedure Rule 215 lists a number of sanctions that a trial court may impose, including striking pleadings and/or entering default judgment. Tex. R. Civ. P. 215(2)(b) & (3). Under Texas case precedent, Judge Montgomery was authorized (assuming the infraction was sufficiently serious) to impose either sanction or both at the sanctions hearing. Id.; See also Drozd Corp. v. Capital Glass & Mirror, 741 S.W.2d 221, 224 (Tex. App. 1987,); Houston v. Arney, 680 S.W.2d 867, 872 (Tex. App. 1984). Thus, discovery fraud and both sanctions were properly heard at the February 20, 2007 hearing.

> **2.   The Hearing and Evidentiary Record Relating to Staton's Other Claims.**

>      a.   Breach of Contract and Damages

Both the breach of contract claim and Staton's damages were actually litigated. While the Texas ruling was primarily focused on the discovery fraud matter, in deciding this issue, the state court implicitly determined several of the factual issues supporting the breach of contract claim. Among these, the ruling establishes that the August 23rd agreement was the parties contract, not the

August 11th document. This, in turn, established that Staton had an unlimited product return right.

Based on the evidence submitted, the state court determined (and in this action Mileski has admitted), that Staton attempted to return a great deal of product purchased under the agreement and was rebuffed. See Hernandez Aff. ¶ 7; see also Adv. Proc. Answer ¶ 7. Whether the supporting legal theory was a simple breach of contract or the more egregious tort of fraud, the state court default judgment adopted the Hernandez evidence showing that this refusal caused Staton damages of $168,887.61 plus prejudgment interest of $15,784.50, plus its attorneys fees of $5,000. Hernandez Aff. ¶ 8.  Again, this was a default judgment, but one based upon evidence establishing the underlying claims.

b.   Pre-litigation (non-discovery) Contract Fraud.

In addition to Staton's discovery fraud claim, Staton also alleged that the Defendants committed fraud prior to the lawsuit by its refusal to acknowledge and abide by the terms of the August 23rd agreement:

> Mileski, both prior to and after the filing of this lawsuit, has committed fraud in his dealing with Plaintiff in wrongfully denying valid agreements with Plaintiff as well as, upon information and belief, creating false documents in order to misrepresent the actual agreements

between the parties to his advantage. (Second Am. Original P. ¶ 9).

Similarly, the fraud count alleges, "Mileski took steps before and after the fact in wrongfully denying valid agreements with Plaintiff." Id. at 14. In short, Staton argues that it pled, proved, and received a default judgment for pre-litigation fraud relating to the parties' agreement. The resulting Default Judgment contains similar language. Mileski is held not only "to have tendered false documents during discovery in this judicial proceeding," but to "have **committed fraud in connection with his dealing with Plaintiff**…." (Texas Ruling) (emphasis added).

Upon this language, Staton argues that the Texas Ruling determined, with preclusive effect, that Mileski committed a fraud separate and apart from the discovery fraud. This court disagrees.

First, from a pleadings standpoint, both the allegations of the second amended original petition and the motion for sanctions are aimed almost exclusively at the forged discovery document. The only other factual averment is the vague reference that Mileski committed fraud by "wrongfully denying valid agreements." Otherwise there are no details at all about how Mileski is supposed to have committed fraud on the plaintiff "in their dealings."

Certainly, there is none of the "who, what, where, when" factual details required under Federal Civil Procedure Rule 9(b) and its state law analogs to plead fraud.  As such, the strong suggestion is that the "fraud in their dealings" allegation is simply another reference to the forged document matter.

The same suggestion can be said about the evidence presented at hearing. The Hernandez Affidavit averments about Staton's attempts to return product suggest that when Staton attempted to return product, long after the sale purchase under the parties August 23rd agreement, it received the run around from Raging River and Mileski.

Staton suggests Mileski's responses to Staton's communication were false and, like the forged agreement given in discovery, were intended to deceive the Plaintiff. (Hernandez Aff. ¶ 7).

Although these facts relating to communications between the parties were established with preclusive effect, they ultimately describe a claim for intentional breach of contract and false representations made after reaching an agreement.  As we will see, these do not establish fraud of the sort contemplated by §523(a)(2)(A).

C. <u>Dischargeability   Under   §523(a)(2a)(A)   and
§523(a)(6)</u>

After assessing the portions of the Texas Ruling that
have been actually litigated and would have under
applicable state law,[6] we must apply these same to the
bankruptcy dischargeability elements of §523(a)(2)(A) and
§523(a)(6) to ascertain whether there are any remaining
issues to be determined. We will first consider what parts
if any of the Texas Ruling establish a §523(a)(6) "willful
and malicious" injury.

### 1. Section 523(a)(6) "Willful and Malicious Injury"

Section 523(a)(6) provides that a debtor is not
discharged from any debt "for willful and malicious injury
by the debtor to another entity or to the property of
another entity." In <u>Kawaauhau v. Geiger</u>, the Supreme Court
held that a debt is nondischargeable under §523(a)(6) if it
results from an act with "intent to cause injury."
<u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61 (1998). A "malicious"
injury does not require a showing of ill-will. <u>In re Kim</u>,
2008 WL 2705082, at *3 (Bankr. E.D. Va. 2008). Rather, it
is sufficient that the act was done intentionally and
deliberately in knowing disregard of the rights of another.
<u>Id.</u>

---

[6]Of the several elements of collateral estoppel, only the "actually
litigated" element is in dispute in this action.

Staton maintains that the State action determined beyond dispute that Mileski attempted to thwart its claims by using a forged agreement. This, it argues, was a willful and malicious injury.[7] This Court agrees. The Texas Ruling determined the facts of the discovery fraud. And as a matter of bankruptcy law, it has been held that a defendant who falsifies records produced in discovery in an attempt to deceive his opponent and the state court is guilty of a "willful and malicious injury under §523(a)(6). See Spring Works, Inc. v. Sarff (In re Sarff), 242 B.R. 620, 624 (6th Cir. 2000) (finding that a magistrate judge's $2,000 discovery sanction against party for intentionally redacting discovery records in an attempt to deceive is non-dischargeable under §523(a)(6)). Therefore, Staton's injuries suffered by that act are unquestionably nondischargeable under Section 523(a)(6). This begs the question of just what are those "injuries."

**a.   Attorney's fees.**

The attorney's fees part of the Texas Ruling relating to the sanctions motion was clearly intended to compensate Staton for costs incurred ferreting out Mileski's fabrication and responding to the false discovery. Clearly,

---

[7] The §523(a)(6) count in this adversary proceeding is limited to the discovery fraud matter. Staton has not suggested that any of Mileski's prepetition acts would give rise to a nondischargeable debt under this subpart.

this much of Staton's judgment is based upon a willful and malicious injury. Thus, there is no doubt that the $5,000 attorney's fee award is non-dischargeable under §523(a)(6).

### b. Contract Damages

Staton contends that the entirety of its award form the state action, including its damages and interest, $168,887.1 and $15,784.50 respectively, are also nondischargeable under §523(a)(2)(A). Staton's assumption appears to be that since Mileski's answer was stricken due to his falsifying a discovery document, all of its damages automatically receive the status of a "willful and malicious injury."

This Court disagrees. Had Mileski's efforts proven successful, this might be the case. If, based on the August 11th agreement, Mileski had succeeded in misleading Staton and the state court, Raging River would have successfully defended the breach of contract action. Staton would have lost the full damage amount. Assuming that the discovery fraud was uncovered after the case was dismissed, then Staton would have been injured in the full amount of its contract damages, etc.

However, Mileski's effort to mislead the court failed. Staton quickly realized that the August 11 agreement was bogus. It responded by amending its complaint, adding

Mileski as a defendant, and by seeking discovery sanctions for this misconduct. Staton was successful in ferreting out and their dealing with Mileski's misconduct.    Its underlying claims were not dismissed; rather, it received judgment for all of its damages.

It would not appear that Mileski's unsuccessful effort to thwart Staton's original claims would convert the breach of contract damages into "willful and malicious" injuries. Certainly, his effort to deceive was "willful and malicious." However, as the resulting "injury" apart from the attorney's fees, the damages awarded to Staton emanated from its pre-litigation sales agreement.    These damages arose well before the discovery matter arose. As discussed below, it may be that these were fraud damages, not just breach of contract claims. If so, they are nondischargeable under Section 523(a)(2). However, these damages did not morph into "willful and malicious injuries" during the state litigation. They do not fall within the ambit of Section 523(a)(6).

### 2.    Section 523(a)(2)(A) Fraud and Misrepresentation.

Section 523(a)(2)(A) excepts from discharge any debt "for money ... to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud..." 11 U.S.C. §523(a)(2)(A). The purpose of §523(a)(2)(A) is "to

protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 219-20 (4th Cir. 2007).

"False pretenses," "false representation," and "actual fraud" are interpreted according to the common understanding of those terms at the time § 523(a)(2)(A) was enacted. E.g., Field v. Mans, 516 U.S. 59, 69, 116 S.Ct. 437, (1995). To define "actual fraud" the Supreme Court looked to the definition of "fraudulent misrepresentation" under the Restatement, which defines the tort as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation. Restatement (Second) of Torts § 525 (1976).

Thus, under the Restatement, "a plaintiff must prove four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." Foley & Lardner v. Biondo (In re Biondo), 180 F.3d 126, 134 (4th Cir. 1999). Regarding a debtor's misstatement of intention, it is only "fraudulent if he does not have that intention at the time

he makes the representation." <u>Palmacci v. Umpierrez</u>, 121
F.3d 781, 786 (1st Cir. 1997) (quoting Restatement (Second)
of Torts § 530(1) (1976)).

Thus, we turn to the two types of fraud,
discovery fraud and contract fraud, arguably committed
by Mileski and analyze them within the meaning of non-
dischargeability.

a.   <u>Discovery Fraud</u>

The Texas elements of fraud parallel those of in
(a)(2)(A). <u>Feagins v. Tyler Lincoln-Mercury, Inc</u>, 277
S.W.3d 450, 455 (Tex. App. 2009)(stating, "A party commits
fraud by (1) making a false, material misrepresentation (2)
that the party either knows to be false or asserts
recklessly without knowledge of its truth (3) with the
intent that the misrepresentation be acted upon, (4) and
the person to whom the misrepresentation is made acts in
reliance upon it (5) and is injured as a result").

Here, Mileski (1) made a fraudulent misrepresentation
by submitting a forged agreement to Staton in discovery and
using it as a defense to the action; (2) until the fraud
was ascertained, Staton and the state court relied on that
representation to act or refrain from acting (seeking
summary judgment); and (3) this caused harm to the
plaintiff which was both delayed and incurred additional

attorneys fees as a result. Therefore, the finding of Mileski's discovery fraud is akin to non-dischargeability under §523(a)(2)(A).

     b.  <u>Breach of Contract</u>

The Texas Ruling determined Raging River breached its agreement with Staton with the clear implication being that the breach was intentional. That determination is by itself insufficient to create a nondischargeable debt owed by Mileski under §523(a)(2)(A), for two reasons.

First, the August 23 agreement was between two corporations. Under the corporate shield doctrine, Mileski would not be liable to Staton for its breach. <u>Garner v. Furmanite Australia Pty., Ltd.</u>, 966 S.W.2d 298, 803 (stating, "The "fiduciary shield" doctrine protects an employee of a company from personal jurisdiction when the employee's actions have been on behalf of his employer").

Second, a breach of a contract, even an intentional breach, is not a fraud as contemplated by Section 523(a)(2)(A). <u>See Strum v. Exxon Co.</u>, 15 F.3d 327, 331 (4th Cir. 1994). In <u>Strum</u>, Exxon contracted to remove its underground storage tanks (UST's) from a former distributor's service station within a specified time. <u>Id.</u> at 329. When the time ran and the tanks remained, the

station owner sued Exxon, stating claims for fraudulent inducement, negligence, and gross negligence. Id.

After contrasting contract and tort law, and the underlying purposes between the two, the circuit court upheld dismissal of Strum's fraud claim. A breach of contract only gives rise to a tort action where an "independent" and identifiable tort exists. See id. at 330. The mere failure to carry out a contractual promise does not support a tort action for fraud. Id. at 331.

The Fifth Circuit has stated the same principle in another way, "[A] promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached." Allison v. Roberts (In re Allison), 960 F.2d 481, 484 (5th Cir. 1992) (citing In re Bercier, 934 F.2d 689 (5th Cir. 1991)). Thus, Staton's claim for intentional breach of contract fails to satisfy the requirements of §523(a)(2)(A).

    c.   Actual Fraud

Staton however sees this not just as a breach of contract by Raging River, but a fraud by Mileski in entering into a contract which he did not intend for Raging River to honor. Staton believes the Texas ruling conclusively determined this fraud by its reference to Mileski having committed fraud in the course of the

31

parties' dealings. (Pl.'s Supplemental Resp. to M. for Recons. and Partial Summ. J. 16).

To establish that a defendant made a false promise of future performance, Staton asserts, a plaintiff need only show that the defendant made a promise with no intention of performing it. A false promise of future performance under a contract is actionable as a false representation. Id. at 14. (citing Turner v. Biscoe, 171 S.W.2d 118, 119 (Tex. Comm'n App. 1943).

Staton notes that under Texas law, slight circumstantial evidence of fraud combined with a breach of contract is sufficient to show intent not to perform. Id. (citing Spoljaric v. Percival Tours, Inc., 708 S.W. 2d 432, 434 (Tex. 1986)). Staton argues that the Texas judgment established the breach of contract and the discovery fraud supplies the required "slight circumstantial evidence of fraud." Therefore, Staton argues that its debt is non-dischargeable under §523(a)(2)(A).

There are a couple of problems with this theory. The first is the dearth of evidence, or any discussion in the state record or in the Texas ruling suggesting that this was what Judge Montgomery meant by "fraud in the parties dealings." The Default Judgment itself does not specify

32

how or when Mileski committed this fraud or exactly what
were those dealings.

From Staton's motion and petition, it appears likely
that fraud in the parties dealings refers to (1) wrongfully
denying valid agreements with Plaintiff and (2) creating
false documents in order to misrepresent the actual
agreements between the parties to his advantage." Second
Am. Original Pet. ¶ 9. The petition language speaking to,
"wrongfully denying the valid agreements," appears to
describe Raring River and Mileski's evasions during the
return process, not to its entry into the contract. Thus,
this would not be a nondischargeable fraud under
§523(a)(2)(A).

If so, the language would not satisfy §523(a)(2)(A).
Rather, this would appear to be an intentional breach of
contract under <u>Strum</u>.

If, wrongfully denying that there was a return right
when one knows it exists rises to the level of an
independent, identifiable tort; it would have to be
misrepresentation. The misrepresentation occurred long
after Staton purchased goods from Raging River under the
agreement. It certainly would not create a debt "for
money ... obtained, by ... false pretenses, etc."
§523(a)(2)(A). A false representation or pretense requires

33

a knowing and fraudulent falsehood that describes **past or current facts** and is relied upon by the other party. RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1292 (5th Cir. 1995)(emphasis added). Here, Staton's debt was incurred before the false representation was made. Staton certainly did not rely on that statement in entering into the purchase.

It also should be noted what Staton now considers to be the fraud in the parties' dealings, is something entirely different than what it asserted when it was before the state court. Now Staton says the fraud in the dealings means, Mileski causing Staton to enter into a contract without an intention to perform, even at the contract date.

If this is the theory, there can be no preclusive effect to the default judgment. This theory was not argued to the state court and there is no indication in the Texas Ruling that it had adduced an original intent by Raging River/Mileski to not to perform under the August 23rd of contract.

Certainly, Staton's Complaint in this adversary proceeding is broad enough to now maintain Mileski never intended to perform under the agreement, although that averment will be difficult to prove. However, this issue is one of disputed fact, which must be addressed in a trial.

Since there are several alternative meanings for the term
"fraud in connection with his dealings," and the only two
meanings this court can draw from the Texas Ruling do not
result in a nondischargeable fraud debt, Staton is not
entitled to summary judgment on this point.

IT IS THEREFORE ORDERED:

(1)   Partial Summary Judgment is **GRANTED** to Staton, as
      to the following matters:

      a. The Texas Court had personal jurisdiction over
         Mileski, either at the outset or because the
         issue was abandoned during the litigation.

      b. The underlying breach of contract by Raging
         River of the August 23, 2007 agreement;

      c. The amount of Staton's debt, of $168,877.61.

      d. The non-dischargeability under Section
         523(a)(2)(A) and (a)(6) of the $5,000 attorneys
         fee award;

(2)   Otherwise Staton's motion is **DENIED.**

(3)   Mileski's Cross Motion for Summary Judgment is
      **GRANTED** to the extent of deeming Staton's damages
      (excluding the attorneys fee award) to be outside
      the ambit of Section 523(a)(6).

(4)   Otherwise, Mileski's motion is **DENIED.**

**SO ORDERED.**

**This Order has been signed electronically.    United States
Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order.**